## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BOAFOA KORAM, | : | 3:23-CV-729 (KAD) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CT DEPT OF CORRECTIONS, et al., | : | DECEMBER 14, 2023 |
| Defendants. | : | |

### INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Kari A. Dooley, United States District Judge:

Plaintiff Boafoa Koram, a pretrial detainee at the York Correctional Institution ("York CI"), commenced this civil rights action under 42 U.S.C. § 1983 for damages and injunctive relief against the Connecticut Department of Correction ("DOC"), Commissioner Quiros, Warden Sexton, Captain Fitzgerald, and Dr. Crabbe. Plaintiff's original complaint asserted constitutional deprivations based on her inability to attend religious services, her classification and special needs placement, deliberate indifference to her medical needs, and excessive force arising out of the use of a chemical agent.

On initial review, the Court permitted Plaintiff to proceed on her claims of Fourteenth Amendment excessive force and First Amendment retaliation against Captain Fitzgerald in his individual capacity. The Court dismissed all other claims as not plausibly alleged pursuant to 28 U.S.C. § 1915A(a).

Plaintiff has filed an amended complaint seeking damages and injunctive relief against several individuals who work at York, Connecticut Valley Hospital, or the Connecticut Department of Children and Families.

**Legal Standard**

1

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

A complaint, even one filed by a self-represented plaintiff, may be dismissed if it fails to comply with Rule 8's requirements "that a complaint must set forth a short and plain statement of the basis upon which the court's jurisdiction depends and of a claim showing that the pleader is entitled to relief." *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972).

**Discussion**

As an initial matter, the Court observes that Plaintiff's amended complaint only arguably satisfies Rule 8's requirement for a short and plain statement of her claims. In several respects Plaintiff's claims are very difficult to discern. The Court has, however, thoroughly reviewed all

factual allegations in the amended complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A. The allegations are only summarized herein as necessary.

### CLAIMS UNDER 42 U.S.C. § 1983

Plaintiff asserts several claims for constitutional deprivations pursuant to 42 U.S.C. § 1983. A plaintiff asserting such claims must allege facts that establish the personal involvement of each named defendant against whom she seeks damages. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); *Tangreti v. Bachmann*, 983 F.3d 609, 618-19 (2d Cir. 2020) (plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

#### Claims against the York Defendants

The Court first considers whether Plaintiff has alleged any plausible claims against York Defendants, Captain Fitzgerald, Warden Sexton, Dr. Crabbe, Dr. Zuckerbron, Dr. Brone, Dr. Bernard, Dr. Scheffel, APRN Pam Dillon, Captain Michaud, Monique Brown, Salvas, and APRN Pat Booth.

#### Fourteenth Amendment Excessive Force

For purposes of initial review, Plaintiff may proceed against Captain Fitzgerald for spraying her in the eyes and placing her in solitary confinement (segregation) for three months.

#### First Amendment Retaliation

Plaintiff alleges that Captain Fitzgerald and Dr. Brone have also subjected her to segregation because of her grievance writing. Am. Compl., ECF No. 23, at 3. She also alleges that APRN Booth threatened that he would take action against her if she did not speak to him, and that

he later placed her on Behavior Observation Status ("BOS") for refusing medication even though she took her medication on camera. *Id.* at 13. The Court will permit Plaintiff to proceed at this initial stage on a First Amendment retaliation claim against Captain Fitzgerald, APRN Booth and Dr. Brone in their individual capacities.[1]

### Fourteenth Amendment Equal Protection Violation

To state an equal protection claim, Plaintiff must allege facts showing that: (1) she has been treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). A plaintiff may also bring a "class of one" equal protection claim "where the plaintiff alleges that [she] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To succeed on a class of one claim, a plaintiff must demonstrate the existence of a person who is "*prima facie* identical" to her and who was

---

[1] Plaintiff makes conclusory assertions (1) that Warden Sexton issued guidelines for special needs inmates as retaliation for filing this lawsuit (*id.* at 8), (2) that correctional staff refused to bring her to court due to her BOS placement as retaliation for her complaint against Fitzgerald (*id.* at 7); (3) that members of a medication panel placed her on a restrictive plan to retaliate against her (*id.* at 9); (4) that Dr. Sheffel participated in retaliating against her by placing her in segregation (*id.* at 10); (5) that Dr. Zuckerbron retaliated against her by drafting an arbitrary plan to detain her in segregation (*id.* at 11); 6) that Dr. Bernard retaliated against her in connection with evaluating her for a conservatorship (*id.* at 12); (7) that APRN Dillon and Dr. Fischer (not a named party) retaliated against her by refusing to assess her for a bottom bunk pass and an inhaler (*id.* at 14); (8) that Captain Michaud retaliated against her by bullying her during her medical panel because he disagreed with her position (*id.*); and (9) that social worker Salvas retaliated against her because she would not willingly take her medication. *Id.* at 5. Consistent with the Second Circuit's instruction to approach retaliation claims with some measure of skepticism, the Court will not permit Plaintiff to proceed on claims based upon a wholly conclusory assertions of a retaliatory motive. *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (instructing district courts to "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.").

treated differently. *Conquistador v. Corcella*, 2023 WL 3006806, at*2 (D. Conn. 2023) (quoting *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019)).

<u>Captain Fitzgerald</u>

Plaintiff alleges that Captain Fitzgerald has treated her differently by imposing increased segregation restrictions that are not applied to other special needs inmates. Am. Compl. at 4. For this claim against Captain Fitzgerald, Plaintiff has not alleged a membership in a suspect class because prisoners in general are not a suspect class. *See Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012).

But the Court will permit her to proceed on a "class of one" equal protection claim against Fitzgerald because her allegations raise at least an inference that he is treating her differently than similarly situated comparators during what she refers to as an indefinite period of segregation.[2] Thus, Plaintiff's Fourteenth Amendment equal protection damages claim may proceed against Captain Fitzgerald in his individual capacity for further development of the record.

<u>Warden Sexton</u>

Plaintiff alleges violation of her equal protection rights by Warden Sexton on the basis of (1) denial of participation in educational, job or other program opportunities in prison due to her special needs status; (2) discrimination based on her mental health by punishing or preventing her from sleeping on the floor; and (2) disparate treatment of special needs inmates.

In the first instance, Plaintiff has not alleged plausible discriminatory treatment against an

---

[2]  Plaintiff refers to indefinite confinement as a condition of her segregation from "April 2023 to current." The Court notes that Plaintiff alleges that Captain Fitzgerald placed her in segregation for three months but later alleges that she is confined in segregation for an indefinite period of time. *See* Am. Compl. at 3-4. As the Court must construe the allegations most favorably to Plaintiff, the Court considers Plaintiff to allege facts reflecting that she remains subject to segregation.

identifiable class because disability is not a protected class under the Equal Protection Clause. *See Horelick v. Lamont*, No. 3:21-CV-1431 (MPS), 2023 WL 5802727, at *7 (D. Conn. Sept. 7, 2023) (citation omitted). Thus, she cannot proceed on her disability class-based claims that special needs inmates are being treated differently at York.

The Court must consider whether Plaintiff has alleged any plausible claims as a class of one. For her equal protection claim regarding relevant participation in prison programming or educational opportunities, Plaintiff has not alleged facts to raise an inference that she is being treated differently from any comparators without a rational reason.

Plaintiff may, however, proceed on her equal protection claim arising from Warden Sexton's denial of her ability to sleep on the floor after correctional staff permitted her to do so. At this stage of the litigation, and mindful of the Second Circuit's directive that *pro se* pleadings be liberally construed, the Court concludes that this claim would benefit from further development of the record and the adversarial process. Thus, Plaintiff may proceed on her equal protection claim under a class of one theory claim against Warden Sexton in her individual capacity.

**Fourteenth Amendment Procedural Due Process: Special Needs Placement**

Plaintiff complains that Warden Sexton violated her procedural due process rights by placing her on special needs status upon her re-arrival at York two years after her release despite the lack of any "incidents" to warrant this placement. Am. Compl. at 5.

Procedural due process requires that prison officials use fair procedures before engaging in any deprivation of a liberty interest. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). For an administrative decision, due process requires that Plaintiff receive some notice of the basis for the restrictive confinement and an opportunity to present her views. *Banks v. Michaud*,

No. 3:20-CV-00326 (JAM), 2020 WL 7188476, at *4 (D. Conn. Dec. 7, 2020) ("For administrative segregation, … a prisoner must merely receive some notice of the basis for restrictive terms of confinement and an opportunity to present [the prisoner's] views."). *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983).

Plaintiff claims that she was not afforded any notice or opportunity to present her views in connection with her special needs placement and that her special needs review was biased. For purposes of initial review, the Court will permit Plaintiff to proceed on a procedural due process claim against Warden Sexton in her individual capacity.

**Fourteenth Amendment Procedural Due Process: Periodic Review**

Plaintiff complains that she has not received a review of her special needs classification. The Court construes Plaintiff's allegation to raise a procedural due process claim based on lack of periodic reviews of her special needs status that subjects her to increased prison restrictions. *See Proctor v. LeClaire*, 846 F.3d 597, 614 (2d Cir. 2017) ("periodic reviews of Ad Seg satisfy procedural due process only when they are meaningful. Reviews are meaningful only when they ... consider all of the relevant evidence that bears on whether [the] administrative justification [for confinement in Ad Seg] remains valid ...").

For initial pleading purposes, the Court will permit Plaintiff to proceed on her procedural due process claim based on the lack of periodic reviews of her special needs classification against Warden Sexton in her individual capacity.

**Deprivation of her Right to Court Access**

Plaintiff alleges that she missed court dates or appointments and had limited access to legal telephone calls. Am. Compl. at 7. The First Amendment to the United States Constitution (in

7

conjunction with the other constitutional provisions) guarantees prisoners "the right of access to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Morello v. Hames*, 810 F.3d 344, 346 (2d Cir. 1987). But, to prevail on a § 1983 access to the court claim, an inmate-plaintiff must demonstrate that a prison official "actually interfered with his access to the courts or prejudiced an existing action." *Tafari v. McCarthy*, 714 F. Supp. 2d 317 (N.D.N.Y. 2010). To state a claim for denial of access to the courts, an inmate is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants. *Lewis*, 518 U.S. at 351-53. To establish an actual injury, an inmate must allege facts showing that the defendant took or was responsible for actions that hindered his efforts to pursue a "nonfrivolous" legal claim. *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002) ("Whether access claim turns on a litigating opportunity yet to be gained or an opportunity already lost... plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim" that he sought to pursue or seeks to pursue in court) (citation omitted); *see Lewis*, 518 U.S. at 353 (suggesting that the injury requirement of an access to courts claim is satisfied if an "inmate could demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." (footnotes omitted)).

Here, Plaintiff has not alleged that any interference with her right to court access frustrated a nonfrivolous claim pursued in court. Accordingly, Plaintiff's access to the court claims must be dismissed as not plausible.

### Sixth Amendment Deprivation

Plaintiff complains that she had no access to her legal telephone calls for a month. Am. Compl. at 21. Under the Sixth Amendment, a criminal defendant is constitutionally entitled to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686 (1984). The Sixth

Amendment right to effective assistance of counsel "only applies to a defendant's trial and first appeal as of right, not to appeals afforded on a discretionary basis, collateral proceedings, or civil proceedings such as civil rights claims challenging prison conditions." *Bourdon v. Loughren,* 386 F.3d 88, 96 (2d Cir. 2004) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 555-57 (1987)); *see also Wolff v. McDonnell*, 418 U.S. 539, 576 (1974) (rejecting application of Sixth Amendment to claim that "would insulate all mail from inspection, whether related to civil or criminal matters").

In the specific context of a criminal defendant inmate's access to counsel, the Second Circuit concluded that a restriction on a criminal defendant's contact with his or her attorney is "unconstitutional where the restriction unreasonably burdened the inmate's opportunity to consult with his [or her] attorney and to prepare his defense." *Benjamin v. Fraser,* 264 F.3d 175, 187 (2d Cir. 2001) (quotation and citation omitted). A plaintiff need not show "actual injury" to have standing for a Sixth Amendment claim. *Id.* at 184-187.

However, "states have no obligation to provide the best manner of access to counsel" and "restrictions on inmates' access to counsel via the telephone may be permitted as long as prisoners have some manner of access to counsel." *Bellamy v. McMickens,* 692 F. Supp. 205, 214 (S.D.N.Y. 1988). Thus, a denial of one method of communicating with an attorney does not give rise to a constitutional violation if the inmate plaintiff has another means of communicating with counsel. *See Lowery v. Westchester Cty. Dep't of Correction*, No. 15-CV-4577, 2017 WL 564674, at *3-*4 (S.D.N.Y. Feb. 10, 2017); *Groenow v. Williams*, No. 13-CV-3961, 2014 WL 941276, at *7 (S.D.N.Y. Mar. 11, 2014) ("Because Groenow has not alleged that he was denied all opportunities to consult confidentially with his attorney, he has not plausibly alleged a Sixth Amendment violation" even though "monitoring telephone calls with his attorney most likely had a chilling

effect on Groenow's ability to communicate effectively with his attorney"). Here, Plaintiff has not alleged facts to indicate that she was denied communication with her attorney through the mail or other means. Accordingly, Plaintiff does not raise any plausible Sixth Amendment violation.

**Religious Deprivations**

Plaintiff's allegations indicate that Warden Sexton and Dr. Scheffel interfered with the exercise of her religious beliefs as a Protestant by coercing or forcing her to change her religion in order to participate in religious services. Am. Compl. at 5-6. The Court construes Plaintiff's allegations to assert violation of her First Amendment rights under the Free Exercise and Establishment Clauses; the Religious Land Use and Institutionalized Persons Act ("RLUIPA");[3] 42 U.S.C. § 2000cc-1; and the Fourteenth Amendment Equal Protection Clause. *See Peters v. Ulster Cnty. Sheriff's Dep't/Emps.*, No. 23-210, 2023 WL 4873315, at *1 (2d Cir. July 27, 2023) (noting "district court did not consider whether Appellant asserted other causes of action, including, but not limited to, an Establishment Clause claim, an equal protection claim, and other free exercise claims, in addition to the free exercise claim it recognized.").[4]

<u>Free Exercise</u>

Inmates "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348

---

[3] Plaintiff cannot proceed against state officials under the Religious Reformation Act ("RFRA"), 42 U.S.C. § 2000bb-1(a), because RFRA has been invalidated as applied to States. *See City of Boerne v. Flores*, 521 U.S. 507, 515–516 (1997).

[4] Plaintiff also claims violation of her Fourteenth Amendment due process rights based on her religious deprivation. But "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing' [the] claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Here, the First Amendment provides explicit textual protection for religious deprivations.

(1987) (citation omitted). But in the prison context, alleged violations of the right to free exercise are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* at 349. Thus, for a prisoner's claim of First Amendment free exercise deprivation, "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers ... legitimate penological objective[s]." *Kravitz v. Purcell*, No. 22-764, 2023 WL 8177114, at *11 (2d Cir. Nov. 27, 2023) (citing *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)). So long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction does not violate the First Amendment. *Turner v. Safely*, 482 U.S. 78, 89 (1987).

The Second Circuit has confirmed that a defendant's isolated acts of negligence do not violate an individual's free exercise of religion. *Wiggins v. Griffin*, No. 21-533, 2023 WL 8009312, at *8 (2d Cir. Nov. 20, 2023). But a plaintiff must adduce evidence sufficient to raise an inference that a defendant acted with at least deliberate indifference in depriving an inmate of the ability to engage in a religious practice. *Id.*; *see also Kravitz*, No. 22-764, 2023 WL 8177114, at *12 (citing *Wiggins,* 2023 WL 8009312, at *8).

For purposes of initial review, Plaintiff has alleged plausible First Amendment Free Exercise Clause violations against Warden Sexton and Dr. Scheffel in their individual capacities.

<u>RLUIPA</u>

RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates

that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Williams v. Annucci*, 895 F.3d 180, 188 (2d Cir. 2018) (quoting 42 U.S.C. § 2000cc-1(a)); *see also Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (noting that RLUIPA allows for injunctive relief but not for money damages claims against state officers in their individual or official capacities).

Plaintiff's complaint is also sufficient to suggest that Warden Sexton and Dr. Scheffel "substantially burden[ed Plaintiff's] sincerely held religious beliefs." *Antrobus v. New York City*, No. 23-CV-7038 (LTS), 2023 WL 6609443, at *2 (S.D.N.Y. Oct. 10, 2023) (under RLUIPA government may not "substantial[ly] burden" an institutionalized person's religious exercise unless the burden furthers a compelling governmental interest by the least restrictive means). Accordingly, Plaintiff may proceed on a RLUIPA claim against Warden Sexton and Dr. Scheffel in their official capacities.

Establishment Clause

"[T]he Constitution guarantees that the government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so." *Lee v. Weisman,* 505 U.S. 577, 587 (1992) (citation, alteration and quotation marks omitted). Thus, "the government must neither encourage nor discourage religion and must maintain neutrality." *Richard v. Strom*, No. 3:18-CV-1451 (CSH), 2018 WL 6050898, at *4 (D. Conn. Nov. 19, 2018).

Here, crediting Plaintiff's allegations as true, the facts suggest that Warden Sexton and Dr. Scheffel coerced her into changing her Protestant religion in favor of different religions.

12

Accordingly, the Court will permit her to proceed on her First Amendment Establishment Clause violation against Warden Sexton and Dr. Scheffel in their individual capacities.

<u>Fourteenth Amendment Equal Protection Clause: Religious Beliefs</u>

In addition, Plaintiff's allegations raise an inference that she is being treated differently than other special needs inmates who are able to engage in religious services without having to change their religious beliefs. Accordingly, the Court will permit Plaintiff to proceed on a claim of Fourteenth Amendment equal protection violation for damages against Warden Sexton and Dr. Scheffel in their individual capacities.

**Fourteenth Amendment Substantive Due Process: Punitive Conditions**

Plaintiff claims that Warden Sexton subjected her to restrictions after her classification as a special needs inmate upon her readmission to York. Although her allegations are not entirely clear, she appears to indicate that she has been subjected to an indefinite term of segregation with conditions including a dirty cell, sewage back up, less than five hours of recreation, inadequate undergarments and extra clothes despite requests, and bullying by another inmate (Gray-Reeves). *See generally*, Am. Compl. at 20-21.

Under the Due Process Clause, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). Thus, the Court must consider "whether the conditions amount to 'punishment' without due process in violation of the Fourteenth Amendment." *Lareau v. Manson*, 651 F.2d 96, 102 (2d Cir. 1981) (citing *Bell*, 441 U.S. at 535). To establish a claim that conditions are punitive, a pretrial detainee must allege facts tending to show that a condition was "imposed for the purpose of punishment," either directly by offering proof of such intent or indirectly by indicating that the

condition is not reasonably related to a legitimate governmental purpose, such as institutional security. *See Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017). A punitive intent may also be inferred if the conditions of confinement are "otherwise arbitrary." *See Banks*, No. 3:20-CV-00326 (JAM), 2020 WL 7188476, at *5 (citing *Almighty Supreme Born* Allah, 876 F.3d at 55).

Plaintiff's allegation that she was immediately classified as a special needs inmate without evaluation upon readmission to custody is sufficient to create the inference that her placement was punitive. *Shelton v. Payne*, No. 3:21-CV-637 (KAD), 2021 WL 3190398, at *4 (D. Conn. July 28, 2021). In addition, her allegedly indefinite segregation under harsh conditions suffices to suggest punitive conditions.

But she has not alleged facts about any Defendants other than Warden Sexton or Captain Fitzgerald who had any involvement with her segregation. *Id*. at *4 (dismissing punitive conditions claims for damages where Plaintiff failed to allege the defendants' personal involvement). Accordingly, Plaintiff may proceed for damages against only Warden Sexton and Lieutenant Fitzgerald in their individual capacities for subjecting her to punitive conditions in violation of substantive due process.

**Fourteenth Amendment Indifference**

Plaintiff asserts several claims of indifference to her conditions and medical needs. To prevail on a Fourteenth Amendment indifference claim, a plaintiff must allege facts to satisfy two prongs: (1) an objective prong showing that plaintiff's condition poses an unreasonable risk of serious harm; and (2) a "*mens rea*," prong, "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk

that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

<u>Conditions of Confinement</u>

For her Fourteenth Amendment conditions claims, Plaintiff must allege that she was deprived of a basic human need. *See Darnell*, 849 F.3d at 29. Even if Plaintiff alleges sufficiently severe conditions to satisfy the objective element, Plaintiff has not alleged facts to satisfy the subjective element. She alleges that Captain Fitzgerald placed her in the basement of the segregation unit with restrictions (Am. Compl. at 4), but she fails to allege any facts about his or any custody defendant who acted with indifference to her complained of conditions: a dirty cell, sewage back up, insufficient recreation, inadequate clothing, and bullying by inmate Gray-Reeves.[5] Accordingly, Plaintiff has not plausibly alleged any Fourteenth Amendment claims based on any Defendants' indifference to these conditions.

<u>Medical Indifference</u>

For a claim of medical indifference under the Fourteenth Amendment, a plaintiff must allege a "serious medical need" or "a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86. Plaintiff's amended complaint raises several claims of indifference to her medical or mental health needs. The Court construes Plaintiff's allegations as asserting indifference to (1) her sleep needs; (2) need for a bottom bunk and inhaler; (3) her medication/mental health needs; and (4) inadequate review by the medical panel.

---

[5] As discussed further, Plaintiff may proceed on her claim that Dr. Brone acted with indifference to a serious risk of harm to Plaintiff's mental health caused by the alleged other-inmate harassment.

### Sleeping Conditions

Plaintiff's allegations indicate that her mental health issues caused her fear of sleeping on the top bunk and therefore she slept on the floor. She claims that Warden Sexton acted with indifference to her right to sleep. Am. Compl. at 7. Plaintiff is correct that "sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013). But courts within this district have held that an inmate must show serious health effects for sleep deprivation to satisfy the Eighth Amendment's objective element. *See Aikens v. Herbst*, No. 16-CV-772S, 2017 WL 1208666, at *3 (W.D.N.Y. Apr. 3, 2017) (dismissing Eighth Amendment sleep deprivation claim where plaintiff failed to allege any harmful effects on his health beyond mere discomfort); *Holmes v. Fischer*, No. 09-CV-00829S(F), 2016 WL 552962, at *17 (W.D.N.Y. Feb. 10, 2016) (granting defense motion for summary judgment where plaintiff failed to allege that cell illumination "resulted in anything more than some sleep deprivation which has consistently been held below the requisite severity for an Eighth Amendment claim").

Here, Plaintiff has not alleged that she experienced sleep deprivation of a constitutional dimension. Nor does she allege that Warden Sexton was aware of the serious risk of harm caused to Plaintiff by prohibiting inmates from sleeping on the floor. Accordingly, Plaintiff has not alleged a plausible Fourteenth Amendment claim based on any indifference to her sleeping conditions by Warden Sexton.

### Inhaler and Bottom Bunk Pass

Plaintiff alleges that APRN Dillon and a doctor who is not a named defendant refused to assess her for a bottom bunk pass or an inhaler. Am. Compl. at 14. But these few alleged facts are

not sufficient to suggest that APRN Dillon acted intentionally or recklessly to disregard a serious risk of harm to Plaintiff by refusing to assess Plaintiff for the bottom bunk pass or inhaler. Accordingly, these claims must be dismissed as not plausible.

Medical/Mental Health Needs

Plaintiff alleges that Dr. Crabbe, Dr. Zuckerbron, Dr. Scheffel, Dr. Bernard, Dr. Brone, and APRN Dillon instituted a restrictive plan that detained her in segregation without any mental health assistance.[6] *Id.* at 11. She claims further that she has asked Dr. Brone for mental health therapy, but he refused to continue with her mental health treatment after one session and later contributed to her suffering by permitting her to be housed during her segregation placement with another inmate who has threatened to kill her and has encouraged Plaintiff to commit suicide. *Id.* at 12. In addition, Plaintiff claims that Dr. Sheffel placed her on BOS status as punishment for not taking her medication and and refused to provide Plaintiff with medical health treatment; and that Dr. Bernard and APRN Booth were involved with placing her on BOS status for an unsubstantiated claim of failing to take her medication. *Id.* at 13.

For purposes of initial review, Plaintiff's allegations raise an inference that she has serious mental health needs and that her segregation exposes her to a serious risk of harm. She has also alleged sufficient facts to raise an inference that the aforementioned Defendants are well aware of her mental health needs but failed to provide her with mental health assistance or remedy her risk of harm during her segregation. Accordingly, the Court will permit Plaintiff to proceed on her Fourteenth Amendment mental health indifference claims against that Dr. Crabbe, Dr. Zuckerbron,

---

[6] Plaintiff alleges that social worker Brown did not provide her with adequate notice prior to the medical panel process for Plaintiff to have sufficient time to call witnesses. Am. Compl. at 15. This allegation does not support a Fourteenth Amendment claim of mental health indifference against Brown.

Dr. Scheffel, Dr. Bernard,[7] Dr. Brone, and APRNs Booth and Dillon in their individual capacities for damages.[8]

**Medical Panel**

Plaintiff makes several complaints about a medical panel that are difficult to discern. It is not clear whether she is alleging that the medical panel determined an involuntary commitment for her. But if she is alleging that she was improperly committed by the medical panel, she has not sufficiently alleged a Fourteenth Amendment due process violation. "[A]n involuntary commitment violates substantive due process if the decision is made 'on the basis of substantive and procedural criteria that are ... substantially below the standards generally accepted in the medical community.'" *Bolmer v. Oliveira*, 594 F.3d 134, 142 (2d Cir. 2010).

Plaintiff's allegations indicate that Dr. Zuckerbron subjected her to arbitrary rules and regulations in connections her medical panel (Am. Compl. at 11); that Defendant Brown provided her insufficient notice for her to retain witnesses for her medical panel (*id.* at 15); and that social worker Salvas provided false information to the medical panel and later to Plaintiff's public defender resulting in her incarceration at Connecticut Valley Hospital. *Id.* at 15-16.

However, Plaintiff's allegations are vague, conclusory and confusing. Accordingly, the amended complaint does not provide sufficient facts for the Court to evaluate whether Defendants' conduct violated Plaintiff's Fourteenth Amendment due process rights in connection with the medical panel decision.

---

[7] Plaintiff's allegations that Dr. Bernard evaluated her for a conservatorship without notification are not sufficient to support a Fourteenth Amendment claim of indifference to Plaintiff's mental health needs.

[8] Plaintiff makes the conclusory assertion that these defendants conspired with Warden Sexton and Captain Fitzgerald to place Plaintiff in segregation. But she provides no factual allegations to reflect that Warden Sexton or Captain Fitzgerald were involved with the medical panel that allegedly determined Plaintiff's placement.

**Right to Privacy**

Plaintiff alleges that the medical defendants shared information about her medical information to various correctional staff members. She claims violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996). However, "there is no private right of action under HIPAA, express or implied." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 242 (2d Cir. 2020).

The Court construes her claims of HIPPA violation as a Fourteenth Amendment right to medical privacy claim. "The Fourteenth Amendment's due process clause protects individuals from arbitrary governmental intrusions into their medical records." *Talarico v. Port Auth. of New York & New Jersey*, 367 F. Supp. 3d 161, 169 (S.D.N.Y. 2019) (quoting *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018)). "A constitutional violation only occurs when the individual's interest in privacy outweighs the government's interest in breaching it." *Hancock*, 882 F.3d at 65; *see also Williams v. City of New York*, 2021 WL 4267736, at *3 (S.D.N.Y. Sept. 20, 2021) (prison officials can impinge on the right to medical privacy "to the extent that their actions are reasonably related 'to legitimate penological interests'") (quoting *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999)). "[T]he interest in the privacy of medical information will vary with the condition." *Powell*, 175 F.3d at 111. Medical conditions entitled to confidentiality are those that are "excruciatingly private and intimate" and "likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." *Swinson v. City of New York*, 2022 WL 142407, at *7 (S.D.N.Y. Jan. 14, 2022) (citation omitted).

Generally, courts "have declined to recognize a claim for violation of medical privacy with regard to disclosure of mental health disorders because such disclosure was not likely to expose

an inmate to discrimination or intolerance." *Flores v. City of New York*, 2022 WL 4705949, at *22 (S.D.N.Y. Aug. 8, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 4592892 (S.D.N.Y. Sept. 30, 2022). Moreover, prison officials can "permissibly impinge" on the right to medical privacy if "their actions are 'reasonably related to legitimate penological interests.'" *Arroyo v. Does #1-#4*, 2022 WL 161478, at *4 (S.D.N.Y. Jan. 19, 2022).

Here, Plaintiff claims that Dr. Scheffel shared information about her medical history with correctional officials in connection with her placement on BOS (which Plaintiff maintains was improper), and that Dr. Crabbe disclosed her medical treatment information with Captain Michaud during the medical panel. Am. Compl. at 10, 14. But she has not alleged facts raising an inference that disclosure of her medical information would likely expose her to discrimination or intolerance. Accordingly, Plaintiff has not alleged facts to support a plausible Fourteenth Amendment violation based on disclosure of her medical information to correctional staff.

**Grievance Interference**

Plaintiff complains in several places about mishandling of her grievances. But inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or even to have a grievance processed properly. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confuses a state-created procedural entitlement with a constitutional right[]"; "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures[]'") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)); *see also Lopez v. McGill*, No. 3:08-CV-01931 (CSH), 2009 WL 179787, at *5-6 (D. Conn. Jan. 31, 2009) (denial of access to, or violation of, grievance procedures does not violate constitutionally protected right such as right to petition government for redress of

20

grievances) (collecting cases). Thus, any section 1983 claims premised on violation of the DOC grievance procedure must be dismissed as not plausible.

### Americans with Disability Act/Rehabilitation Act Violations

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84–85 (2d Cir.), corrected, 511 F.3d 238 (2d Cir. 2004). Title II applies to any state or local government or instrumentality of a state or local government. 42 U.S.C. § 12131(1). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Section 504 of the RA states that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under" any covered program or activity. *Id.* The Second Circuit has noted that "the standards under both statutes are generally the same[.]" *Wright N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). Where, as here, any subtle distinctions between the statutes are not implicated, courts "'treat claims under the two statutes identically.'" *Id.* (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

In order to prevail on a claim under either Title II of the ADA or § 504 of the RA, Plaintiff "must show that 1) he is a qualified individual with a disability; 2) [the defendant] is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the defendant's] services, programs, or activities [or that the defendant] otherwise discriminated against him by reason of his disability." *Wright*, 831 F.3d at 72.

Plaintiff claims that Dr. Scheffel violated her rights under the ADA when she was placed on BOS for not taking her medication. But Plaintiff is essentially challenging the adequacy of Dr. Scheffel's medical judgment, and neither the ADA nor the RA applies to claims regarding the adequacy or substance of medical services provided by correctional departments or provides a remedy for medical malpractice. *See Maccharulo v. New York State Dep't of Correctional Servs.*, No. 08-CV-301 (LTS), 2010 WL 2899751, at *2-3 (S.D.N.Y. July 21, 2010); *Atkins v. Cty. of Orange*, 251 F. Supp. 3d 1225, 1232 (S.D.N.Y. 2003). Courts "routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010). Accordingly, the Court dismisses Plaintiff's claims of disability discrimination under the ADA and RA against Dr. Scheffel.

**Misjoinder and Severance**

Rule 20 of the Federal Rules of Civil Procedure permits a plaintiff to sue multiple defendants in the same lawsuit only if the allegations arise "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). When a complaint fails to satisfy this Rule, the court may sever the claims. *See* Fed. R. Civ. P. 21. In deciding whether to sever a claim, the court must consider whether "(1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012).

Here, Plaintiff alleges mistreatment by Stamford Police Officers Herman and Petrenko, the Connecticut Valley Hospital employee defendants—Natalie Battel Hall, Andre Cross, and Jaymar—and, DCF Supervisor Ofori Koram (Plaintiff's brother whom she alleges sexually assaulted her and continues to harass her). But these allegations do not arise from the same transactions or occurrences as her Fourteenth and First Amendment claims arising from her treatment at York. Nor would judicial economy be served by trying all of the claims because different sets of evidence and witnesses would need to be presented at trial, and different remedies or other considerations might arise in settlement negotiations. Accordingly, the Court will sever these claims and dismiss them from the current action. If Plaintiff wishes to pursue her claims against the Stamford Police Officers, Connecticut Valley Hospital employees, and DCF Supervisor Koram, she must do so by filing separate actions.

### Official Capacity Claims

Plaintiff requests reversal of DOC and mental health sanctions, an institutional review of DOC, legal classes for inmates, housing, and an apology. To the extent Plaintiff seeks money damages against the defendants, who are state employees, in their official capacities, such claims are dismissed as barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity to the extent she alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v.*

*Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted). Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). Thus, injunctive relief afforded by a court must be narrowly tailored or proportional to the scope of the violation and extending no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011). The court should additionally reject "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution." *Id.*

Construed most broadly, Plaintiff's amended complaint raises an inference that she is subject to ongoing constitutional deprivations based on deliberate indifference to her mental health needs, religious deprivations, due process violations arising from her special needs placement and lack of periodic review, and class of one disparate treatment.

However, Plaintiff's requests for the Court to order legal classes for inmates and DOC's institutional review seek to reform the DOC beyond the scope of any ongoing federal violation at issue in this matter. In addition, it is not clear what relief Plaintiff seeks in her requests for housing and a reversal of DOC and mental health sanctions. And the Court does not have authority to order DOC to apologize to Plaintiff. *See, e.g., Miller v. Town of Morrisville*, No. 5:15-CV-00184, 2015 WL 4994175, at *2 (D. Vt. Aug. 20, 2015) ("At the outset, the court notes that it has no authority to order defendants to apologize or admit that racism and discrimination are real."); *Kitchen v. Essex County Correctional Facility*, No. 12-2199 (JLL), 2012 WL 1994505, at *4 (D.N.J. May 31, 2012) (holding that "[t]he remedy of 'apology' ... is not cognizable, either within the meaning of a § 1983 action or as a general legal remedy that a court has the power to order, under any

provision").

At this still early stage in the proceeding, Plaintiff may proceed for official capacity relief against Defendants to remedy (1) ongoing Fourteenth Amendment violations based on punitive restrictions, mental health indifference, her special needs classification and lack of periodic review, and class of one disparate treatment; and (2) ongoing religious deprivations in violation of the First Amendment, Fourteenth Amendment and RLUIPA. Thus, Plaintiff may proceed for official capacity relief against Captain Fitzgerald, Warden Sexton, Drs. Crabtree, Zuckerbron, Scheffel, Bernard, and Brone, and APRNs Dillon and Booth.

**ORDERS**

For the foregoing reasons, the court enters the following orders:

(1) Plaintiff may proceed on her claims of (1) Fourteenth Amendment excessive force against Captain Fitzgerald in his individual capacity; (2) First Amendment retaliation against Captain Fitzgerald, APRN Booth and Dr. Brone in their individual capacities; (3) Fourteenth Amendment equal protection against Captain Fitzgerald and Warden Sexton in their individual and official capacities; (4) Fourteenth Amendment procedural due process violation arising from her special needs classification and failure to provide periodic review against Warden Sexton in her individual and official capacities; (5) Fourteenth Amendment substantive due process based on punitive restrictive conditions against Captain Fitzgerald and Warden Sexton in their individual and official capacities; (6) religious deprivation in violation of the First Amendment Establishment and Free Exercise Clauses and RLUIPA against Warden Sexton and Dr. Scheffel in their individual and official capacities; (7) Fourteenth Amendment medical/mental health indifference against Defendants Drs. Crabtree, Zuckerbron, Scheffel, Bernard, and Brone, and APRNs Dillon and

Booth in their individual and official capacities. As discussed above, all other claims against these Defendants are dismissed.

The Court concludes that Plaintiff has not alleged any plausible claims against Defendants Salvas, Brown and Michaud. Any such claims are dismissed and the Clerk is instructed to terminate these defendants.

The Court SEVERS and DISMISSES claims against Stamford Police Officers Herman and Petrenko; Connecticut Valley Hospital employees Unit Manager Natalie Battel Hall, Andre Cross and Jaymar; and DCF Supervisor Ofori Koram. *See* Fed. R. Civ. P. 21. The Clerk is instructed to terminate these defendants as well.

 (2) The clerk shall verify the current work addresses for Captain Fitzgerald,[9] Warden Sexton, Drs. Crabtree, Zuckerbron, Scheffel, Bernard, and Brone, and APRNs Dillon and Booth with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint (ECF No. 23) and attachments to them at their confirmed addresses on or before January 10, 2024, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) By January 3, 2024, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshals Service. The U.S. Marshals Service shall serve the summons, a copy of the amended complaint, and a copy of this Order on Captain Fitzgerald,

---

[9] It appears from the docket that service has not yet been effect on Captain Fitzgerald.

Warden Sexton and Drs. Crabtree, Zuckerbron, Scheffel, Bernard, and Brone, and APRNs Dillon and Booth in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06160.

(4) The Clerk shall send a courtesy copy of the amended complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) The Defendants shall file their response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If a defendant chooses to file an answer, the defendant shall admit or deny the allegations and respond to the cognizable claims recited above. The defendant may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by July 13, 2024. Discovery requests shall not be filed with the court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by August 13, 2024.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes her address at any time during the litigation of this case, Local Court Rule 83.1(c) provides that she MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if she is incarcerated. She

should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, she should indicate all of the case numbers in the notification of change of address. She should also notify Defendants or defense counsel of her new address.

(11) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of December 2023.


*/s/ Kari A. Dooley*_____
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE