## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AKOSUA BOAFOA KORAM, | : | 3:23-CV-729 (KAD) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CT DEPT OF CORRECTIONS, et al., | : | AUGUST 22, 2024 |
| Defendants. | : | |

### <u>RULING ON MOTION TO DISMISS</u>

Plaintiff Boafoa Koram, a pretrial detainee at the York Correctional Institution ("York CI"), brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging claims of (1) excessive force in violation of the Fourteenth Amendment against Captain Fitzgerald in his individual capacity; (2) retaliation in violation of the First Amendment against Captain Fitzgerald, APRN Booth, and Dr. Brone in their individual capacities; (3) a Fourteenth Amendment equal protection violation against Captain Fitzgerald and Warden Sexton in their individual and official capacities;[1] (4) Fourteenth Amendment procedural due process violation arising from her special needs classification and failure to provide periodic review against Warden Sexton in her individual and official capacities; (5) Fourteenth Amendment substantive due process violation based on punitive restrictive conditions against Captain Fitzgerald and Warden Sexton in their individual and official capacities; (6) religious deprivation in violation of the First Amendment Establishment and Free Exercise Clauses and Religious Land Use and Institutionalized Person Act ("RLUIPA") against Warden Sexton and Dr. Scheffel in their individual and official capacities; and (7) Fourteenth Amendment deliberate indifference to her medical/mental health needs against Defendants Drs. Crabtree, Zuckerbron, Scheffel, Bernard, and Brone, and APRNs

Dillon and Booth in their individual and official capacities. Initial Review Order ("IRO"), ECF No. 40.

Defendants have filed a motion to dismiss certain claims under Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. to Dismiss, ECF No. 52-1 ("Defs.' Mot."). Plaintiff has filed an opposition, Pl.'s Opp'n, ECF No. 53, and an addendum in support of her opposition, Pl.'s Addendum, ECF No. 64.

For the following reasons, the motion to dismiss is granted in part and denied in part.

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at

---

[1] The Court permitted Plaintiff to proceed on two separate equal protection claims: one claim against Captain Fitzgerald for subjecting Plaintiff to increased segregation restrictions that are not applied to other special needs inmates, and another claim against Warden Sexton for denying Plaintiff the ability to sleep on the floor. IRO at 5-6.

679. Thus, the complaint must contain "factual amplification ... to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

**FACTUAL ALLEGATIONS**[2]

---

[2] The Court has discussed the factual allegations in Plaintiff's Amended Complaint at length in ECF 40, the Court's Initial Review Order, and summarizes only those allegations that form the basis of claims that the Court permitted to proceed to service.

Plaintiff alleges that Captain Fitzgerald sprayed her in the eyes and placed her in solitary confinement for three months. IRO at 3. She further alleges that Captain Fitzgerald and Dr. Brone subjected her to segregation in retaliation for her writing of grievance complaints. *Id.* She additionally alleges that APRN Booth threatened that he would take action against her if she did not speak to him, and that he later placed her on Behavior Observation Status ("BOS") for refusing medication even though she took her medication on camera. *Id.* at 3-4. She alleges that Warden Sexton discriminated against her because of her mental health by punishing or preventing her from sleeping on the floor, and placed her on special needs status upon her re-arrival at York two years after her release despite a lack of "incidents" to warrant this placement, a process that Plaintiff alleges was biased and did not afford her any opportunity to present her own views with respect to a special needs placement. *Id.* at 5-7. She additionally alleges that she did not receive a review of her special needs classification. *Id.* Moreover, Plaintiff alleges that the reinstatement of her special needs status resulted in an indefinite term of segregation with punitive conditions, including a dirty cell, sewage back up, less than five hours of recreation, inadequate undergarments or extra clothes despite requests, and bullying by another inmate. *Id.* at 13.

Plaintiff further alleges that Warden Sexton and Dr. Scheffel interfered with the exercise of her religious beliefs as a Protestant by coercing or forcing her to change her religion in order to participate in religious services. *Id.* at 10. As to the claims concerning her medical and mental health needs, Plaintiff alleges that Dr. Crabbe, Dr. Zuckerbron, Dr. Scheffel, Dr. Bernard, Dr. Brone, and APRN Dillon instituted a restrictive plan that detained her in segregation without any mental health assistance. *Id.* at 17. She further claims that despite having asked Dr. Brone for

mental health therapy, he refused to continue with her mental health treatment after one session and then contributed to her mental health issues by allowing her to be housed during her segregation placement with another inmate who had threatened to kill her and encouraged her to commit suicide. *Id.* In addition, Plaintiff alleges that Dr. Sheffel placed her on BOS status as punishment for not taking her medication and refused to provide her with treatment, and that Dr. Bernard and APRN Booth were involved in placing her on BOS status for an unsubstantiated claim of failing to take her medication. *Id.*

**DISCUSSION**

Defendants move to dismiss Plaintiff's Fourteenth Amendment equal protection claims against Warden Sexton, Plaintiff's Fourteenth Amendment excessive force claim against Captain Fitzgerald, and her First Amendment and RLUIPA claims against Warden Sexton and Dr. Scheffel. Defendants argue that Plaintiff failed to allege facts sufficient to state a plausible equal protection claim and that it is clear on the face of the complaint that she failed to comply with the Prison Litigation Reform Act ("PLRA") by exhausting her administrative remedies prior to pursuing in federal court her complaints about religious deprivations and Captain Fitzgerald's use of excessive force premised upon his use of a chemical agent. Defs.' Mot. at 5.

**Fourteenth Amendment Equal Protection Violation**

To state an equal protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v.*

*Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). A plaintiff must demonstrate evidence of "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). Thus, to prevail on an equal protection claim, a plaintiff must allege that (1) compared with others similarly situated he or she was treated differently; and (2) that such different treatment was based on impermissible considerations such as race, national origin, religion, or some other protected right. *See Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011) (citation omitted).

When a suspect classification is not at issue, the Equal Protection Clause still requires that individuals are treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012). A plaintiff may bring a "class of one" equal protection claim where the plaintiff alleges that he or she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *See Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

6

Plaintiff does not allege any facts which would support the inference that she was subject to disparate treatment due to "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel*, 232 F.3d at 103 (internal citations and quotations omitted). Although Plaintiff appears to ground her equal protection claim in her status as a disabled person, Plaintiff cannot proceed on this theory because disability is not a protected class under the Equal Protection Clause. *See Horelick v. Lamont*, No. 3:21-CV-1431-MPS, 2023 WL 5802727, at *7 (D. Conn. Sept. 7, 2023) (citation omitted). Further, neither sentenced inmates nor pretrial detainees are recognized members of a protected or suspect class. *Gonzalez v. Hannah*, No. 3:19-CV-1522 (VLB), 2020 WL 3256869, at *8 (D. Conn. June 16, 2020). On initial review, the Court permitted Plaintiff to proceed for further development of the record on her claim of equal protection violation as a "class of one" based on Warden Sexton denying her the ability to sleep on the floor. IRO at 6. Upon further review, the Court determines that the facts in the body of Plaintiff's Amended Complaint do not raise an inference that Plaintiff was singled out to be treated differently from other inmates when Warden Sexton denied her the ability to sleep on the floor. Am. Compl. at 7, ECF No. 23. Plaintiff alleges that Warden Sexton "instructed staff to place in a memo" a provision to prohibit inmates from sleeping on the floor. *See id.* Thus, Plaintiff has not raised a plausible equal protection violation because the alleged facts indicate that Warden Sexton prohibited all inmates from sleeping on the floor, and no alleged facts suggest that any similar inmate or comparator was permitted to sleep on the floor while Plaintiff was prohibited from doing so. *See id.* Accordingly, the Court GRANTS the motion to dismiss as to Plaintiff's Fourteenth Amendment equal protection claim against Warden Sexton.

**Failure to Exhaust Administrative Remedies**

Defendants argue the Amended Complaint—specifically, the attached Level 1 Grievances—establish that Plaintiff has not exhausted her available administrative remedies with respect to her claims of religious deprivations in violation of the First Amendment and RLUIPA and her claim against Captain Fitzgerald for excessive force arising out of the use of a chemical agent. Defs.' Mot. at 5-8.

<u>PLRA</u>

A plaintiff cannot bring an action "with respect to prison conditions under section 1983 ... or any other Federal law ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). The Court can, however, dismiss a complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted if a plaintiff does not properly exhaust his or her administrative remedies. *See, e.g.*, *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (noting that "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement").

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). The exhaustion requirement may be excused, however, when the remedy is not available in practice even if it is "officially on the books." *Ross v. Blake*, 578 U.S. 632, 642–43 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are

'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Supreme Court has identified three types of circumstances in which an administrative procedure is unavailable and, therefore, need not be exhausted: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross,* 578 U.S. at 643–44. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). Special circumstances will not relieve an inmate of the obligation to comply with the exhaustion requirement.[3]

Administrative Directive 9.6

The Court takes judicial notice of the Administrative Directive ("A.D." or "Directive") that governs the grievance procedure set forth in Connecticut DOC Administrative Directive 9.6 (effective April 30, 2021), which is available on the Department of Correction website.[4] Directive 9.6(1) provides: "The Department of Correction shall provide a means for an inmate to

---

[3] The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive." *Williams*, 829 F.3d at 123 n.2 (2d Cir. 2016). However, the Court is guided by the illustrations provided in *Ross*. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) ("The Supreme Court described three scenarios in which administrative procedures could be 'officially on the books,' but 'not capable of use to obtain relief,' and therefore unavailable. While not exhaustive, these illustrations nonetheless guide the Court's inquiry." (quoting *Ross*, 578 U.S. at 643)).

seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority." The Commissioner's authority extends to "administer[ing], coordinat[ing] and control[ing] the operations of the department" and maintaining "responsib[ility] for the overall supervision and direction of all institutions, facilities and activities of the department." Conn. Gen. Stat. Ann. § 18-81. Thus, the Department of Correction provides a means for prisoners, such as Plaintiff, to seek formal review of staff actions falling under the Commissioner's responsibility to supervise the direction of all activities in the prison. *See Quint v. Robinson*, No. 3:23-CV-226 (VAB), 2024 WL 2801718, at *2 (D. Conn. May 31, 2024) (concluding Administrative Directive 9.6 provides a means for review of DOC staff action that "fall under the Commissioner's responsibility to supervise the direction of all activities in the prison").[5]

Administrative Directive 9.6 provides a "three-tiered grievance procedure." *Id.* at *2 (internal citations and quotation marks omitted). Defendants argue that Plaintiff's Amended Complaint demonstrates that her exhaustion effort did not proceed beyond her rejected Level 1 Grievances. Defs.' Mot. at 5-10.

<u>Exhaustion of Religious Deprivation Claims</u>

Plaintiff alleges that she was deprived of religious services because inmates on special needs status cannot be around "more than eighth (8) people" and that she has not been able to

---

[4] The Court takes judicial notice of Administrative Directive 9.6, effective April 30, 2021. *Administrative Directive Chapter 9 Classification*, Conn. Dept. of Corr., https://portal.ct.gov/DOC/AD/AD-Chapter-9; *see also Nicholson v. Murphy*, No. 3:02-CV-1815 (MRK), 2003 WL 22909876, at *7 n.2 (D. Conn. Sept. 19, 2003) (taking judicial notice of Administrative Directives as "written guidelines, promulgated [under] Connecticut General Statutes § 18–81, establishing the parameters of operation for Connecticut facilities.").

[5] Because the failure to exhaust administrative remedies is an affirmative defense, the defendant bears the burden of showing that an incarcerated individual has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216.

attend religious services every week. Am. Comp. at 5. Plaintiff attached to her Amended

Complaint two grievances concerning her inability to attend religious services.

In a Level 1 Grievance dated April 25, 2023, Plaintiff asserted that she was "barred from

attending a religious service of [her] choice" due to a restriction on the number of inmates

permitted to attend. Am. Compl. at 44. Under Directive 9.5, Plaintiff's Level 1 Grievance could

be returned with a disposition of rejected (if the administrative remedy failed to satisfy the

procedural requirements of the requested remedy), denied, compromised, upheld, or withdrawn.

A.D. 9.6(5)(n)(i)–(ii); A.D. 9.6(6)(b)(i)(2); *see also* A.D. 9.6(3)(h). Warden Sexton entered a

disposition of "rejected" on this Grievance and "See attached" in the box for her statement of the

reason for her rejection. Am. Compl. at 44. The attached memorandum stated: "Your Grievance

has been received and reviewed." *Id.* at 45. In the memorandum, Warden Sexton explained that

Plaintiff was "not eligible to attend Religious Services" based on her "current Restrictive

Housing Status." *Id.*

In a second Level 1 Grievance dated April 26, 2023, Plaintiff complained that "religious

services" needed to "cater to" inmates with mental health needs. *Id.* at 48. Warden Sexton

rejected this Level 1 Grievance for the stated reason that "[t]here are no noted or documented

attempts to informally resolve this issue." *Id.* Under Directive 9.6(6)(a)(ii)(2), Plaintiff was

required to submit her Level 1 Grievance with an attached Inmate Request Form (including a

staff response) or with an explanation about why it was not attached.

Defendants' motion to dismiss argues only that Plaintiff's rejected Level 1 Grievance

filed on April 26, 2023, shows her failure to satisfy her exhaustion under the PLRA. *See* Defs.'

Mot. at 9. Thus, Plaintiff's opposition addresses only her efforts to satisfy her informal resolution

requirement and explains that she "wrote informally many times to the Warden and Dr. Scheffel with no response" and that her Level 1 Grievance was "rejected for failure of a response but this was beyond [her] control." Pl. Opp. at 1, ECF No. 53. Plaintiff's response reveals that she eschewed the requirements for exhaustion under Administrative Directive 9.6. First, under Directive 9.6(a)(ii), Plaintiff was permitted to file a Level 1 Grievance even if she did not receive a timely staff response to her informal written request within fifteen business days (*see* A.D. 9.6(6)(a)(8)); to do so, Plaintiff was required to provide an "an explanation" for why the Inmate Request Form was not attached. A.D. 9.6(6)(a)(ii)(2). Further, even if she failed to file a procedurally compliant Level 1 Grievance, Plaintiff had five calendar days to correct the defect and resubmit the administrative remedy request. A.D. 9.6(6)(b)(i)(2)(a)(i)(1) ("If the review finds the Grievance not to be in compliance, then the Grievance shall be rejected and the inmate shall be notified. 1. If the failure to meet the procedural requirement (s) can be corrected the inmate shall have (5) calendar days to correct, the defect (s) and resubmit a request for administrative remedy.").

Nonetheless, the instant record reveals that Warden Sexton addressed the merits of Plaintiff's grievance regarding her inability to attend religious services due to her special needs status raised in her Level 1 Grievance filed on April 25, 2023. Am. Compl. at 45. The PLRA exhaustion requirement may be satisfied where "prison officials address and resolve a grievance on the merits despite the fact that it might not comply with procedural rules." *Castillo v. Hogan*, No. 3:14-CV-1166 (VAB), 2018 WL 1582514, at *7 (D. Conn. Mar. 31, 2018) (citing cases); *see also Hill v. Curcione*, 657 F.3d 116, 125 (2d Cir. 2011) (exhaustion requirement is satisfied "by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate

prison authority."). As the Second Circuit noted, when the DOC official resolves a procedurally noncompliant grievance on the merits "the grievance has served its function of alerting the state and inviting corrective action.'" *See id.* (citing *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)); *see also Castillo*, 2018 WL 1582514, at *7 (same).

Accordingly, it is not clear on the face of the Amended Complaint that Plaintiff failed to exhaust her available administrative remedies under Directive 9.6 prior to pursuing her religious deprivation claims in federal court. Accordingly, the Court denies the motion to dismiss as to Plaintiff's claims of religious deprivations for failure to satisfy the PLRA's exhaustion requirement prior to asserting these claims in this federal action.

Exhaustion of Fourteenth Amendment Excessive Force Claim Against Captain Fitzgerald

Plaintiff's Amended Complaint included two Level 1 Grievances that raised her complaint about Captain Fitzgerald's chemical agent use on March 6, 2023. Am. Compl. at 59-63.[6]

In a Level 1 Grievance dated March 27, 2023, Plaintiff asserted that her medical grievance was "lost," that her special needs review was denied, and that she "was injured by chemical agent by Captain Fitzgerald." *Id.* at 59. She requested an investigation and opportunity to appeal her special needs decision and her "panel meds decision with a new panel." *Id.* In a response dated April 10, 2023, Warden Sexton rejected this Level 1 Grievance with the following stated reason:

> AD 9.4 Section 13.D-F Special Needs Management Status. Placement on Special Needs Management status or participation in the Special Needs Management Behavioral Treatment Program shall be determined by the Director of Offender Classification and Population Management in consultation with the Deputy Commissioner of Operations

---

[6] Plaintiff appears to have attached two copies of the same Level One Grievance.

and Rehabilitative Services or designee[.] A classification hearing for each inmate
classified to Special Needs Management status shall be held at a minimum of every six
(6) months. Each inmate classified to Special Needs Management status shall be
reviewed by a mental health professional after 30 days of Initial placement and every 90
days thereafter. All such reviews shall be documented in the inmate's health record.
Health Services Panel Determinations are reviewed by the Health Services
Administrative Remedies Coordinator.

*Id.*

Plaintiff later filed a Level 1 Grievance dated May 8, 2023, to complain, *inter alia*, about

Captain Fitzgerald's "unauthorized" use of the chemical agent on March 6, 2023. *Id.* at 60-63.

She indicates that she attached her written correspondence dated May 5 and June 1, 2023, to

Captain Fitzgerald (this record does not, however, include these attachments). *Id.* at 61, 63.

Warden Sexton rejected Plaintiff's Level 1 Grievance for failure to comply with the informal

resolution requirements of Directive 9.6(6)(a)(ii). Warden Sexton's response indicates that she

attached "four CN 9601 forms" so that Plaintiff could "write to the appropriate staff to attempt to

informally resolve this issue." *Id.* at 60, 62.

Plaintiff's Level 1 Grievance dated March 27, 2023, was (1) filed within thirty calendar

days from the date of her exposure to the chemical agent on March 6, 2023, as required under

Directive 9.6(6)(a)(ii)(4), and (2) raised a claim about her injury caused by Captain Fitzgerald's

use of the chemical agent. As Directive 9.6(5)(c)(i) requires that "[e]ach request for an

administrative remedy must be filed separately," Plaintiff's Level 1 Grievance seeking more than

one remedy for distinct complaints could be considered procedurally noncompliant. But Warden

Sexton's April 10, 2023, disposition statement rejecting this Grievance failed to address

Plaintiff's claim about her chemical agent injury or "notif[y]" her of her rejection for

noncompliance under Directive 9.6(5)(c)(i).

Thus, the present record suggests that Plaintiff could not "know whether and how to pursue h[er] grievance" to correct the reason for its rejection within five days as provided under Directive 9.6(6)(b)(i)(2)(a)(i)(1). *See Williams*, 829 F.3d at 124 (the administrative remedy may be considered to be unavailable because it is "so opaque" and "confusing that ... no reasonable prisoner can use [it].") (citing *Ross*, 578 U.S. at 643-644); *see also Sease v. Frenis*, No. 3:17-CV-770 (SRU), 2021 WL 260398, at *9 (D. Conn. Jan. 25, 2021) ("contradictory instructions in a grievance procedure can … lead to an administrative scheme's being prohibitively opaque.") (internal citations omitted). Plaintiff's later attempt on May 8, 2023, to file a Level 1 Grievance concerning Captain Fitzgerald's chemical agent was rejected for failure to comply with the informal resolution requirement. But by this time, Plaintiff may not have been able to correct her procedural defect because a Level 1 Grievance must be filed "within 30 calendar days of the occurrence or discovery of the cause of the Grievance." A.D. 9.6(6)(a)(ii)(4). Notably, the Grievance was not rejected as untimely filed, suggesting that Warden Sexton may have waived this procedural requirement.

Because it is not clear on the face of the Amended Complaint that Plaintiff failed to exhaust her available administrative remedies,[7] a determination of whether this claim is barred for noncompliance with the PLRA exhaustion requirement is more appropriate for review on a motion for summary judgment. The Court DENIES the motion to dismiss on this Fourteenth Amendment claim against Captain Fitzgerald.

---

[7] As an additional matter, Plaintiff's Level 1 Grievance dated March 27, 2023, indicates that it included attachments that are not available for the Court to review. *See* Am. Compl. at 61, 63.

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss, ECF No. 52, is **GRANTED** in part and **DENIED** in part. The Motion is granted as to Plaintiff's Fourteenth Amendment equal protection claim against Warden Sexton and is denied in all other respects. Whether the Plaintiff exhausted her administrative remedies under the PLRA cannot be determined on the face of the Amended Complaint.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of August 2024.

 _/s/ Kari A. Dooley_
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

16